UNITED STATES DISTRICT COURT
NORTHERN DIVISION OF FLORIDA
PENSACOLA DIVISION

**CECILE JACKSON,**   CASE NO.

    **Plaintiff,**

v.

**FRANK KENDALL, Secretary,
UNITED STATES DEPARTMENT
OF THE AIR FORCE,**

    **Defendant.**
_____/

# COMPLAINT

Plaintiff, JACKSON, CECILE hereby sues Defendant, FRANK KENDALL, Secretary of the United States, Department of the Air Force and alleges:

## NATURE OF THE ACTION

1. This is a civil action seeking monetary damages, declaratory judgment, and legal, equitable, and injunctive relief against Defendant. This is an action brought under Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. §2000e et seq. and under 42 U.S.C. §1981a. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (civil rights claim jurisdiction).

2. This is an action involving claims which are, individually, in excess of Seventy- Five Thousand Dollars.

## PARTIES

3. At all times pertinent hereto, Plaintiff, JACKSON, CECILE, has been a resident of Santa Rosa County, FL. She is thus *sui juris*.

4. At all times pertinent hereto, Defendant, CITY OF Eglin AFB has been organized and existing under the laws of the State of Florida. It is thus *sui juris*.

## CONDITIONS PRECEDENT

5. Written notices of intent to initiate litigation on Plaintiff's state law claims asserted herein were submitted to Defendant pursuant to 768.28(6), Florida Statutes.

## STATEMENT OF THE ULTIMATE FACTS

6. Plaintiff, an African American female, began her employment with Defendant in November 2016. She held the position of SCOS Branch Chief of the Client Services Center at the 96th Communication Squadron, Eglin Air Force Base at the time of her constructive termination on December 16, 2021, and her last day was on February 2, 2022. She previously held the position of Section Chief.

7. Despite her stellar work performance during her employment with Defendant, Plaintiff was subjected to disparate treatment, different terms, and conditions of employment, and was held to a different standard because of her race and gender and because she reported Defendant's unlawful employment activities and was subject to retaliation thereafter.

8. The disparate treatment and retaliation came at the hands of specifically but not limited to Lt Col Scott Weed, Scott Davis, SMSgt Terrell Breaux.

9. Plaintiff received many high markings during her employment with Defendant due to her strong leadership and workmanship. She was awarded Civilian of the Quarter numerous times and Civilian of the Year in 2019-2020.

10. Nevertheless, those accomplishments were not obtained without hardship. Plaintiff was the only black woman in her area and was subjected to harassment and disparate treatment, initially, on the base of her race and gender.

11. Between 2016 and May, 2018, Plaintiff held the position of Section Chief with responsibilities for client services, primarily performing IT work for the Defendant.

12. In May, 2018, Plaintiff's supervisor quit and she was elevated to the Branch Chief position but with fewer areas of responsibility than her prior supervisor had and no pay increase. Plaintiff was well able to perform all of the areas of responsibility in the section but multiples of areas of responsibility were removed from the position after Plaintiff's title change.

13. Significantly, after Plaintiff's constructive discharge, the section was returned largely to its pre-Plaintiff state like it had been under her prior supervisor.

14. Between May 2018 to February 2021, after Plaintiff's title change to Branch Chief, she was excluded from meetings that pertained to her branch that impacted her ability to perform her job. There were important meetings that she should have been included in that pertained to her job duties and she would only learn of matters pertaining to her areas of responsibility after the fact and second hand.

15. After Plaintiff's title change, and the sections were removed from her supervision, she continued to have certain responsibilities relating to the sections that were removed but she had no oversight over the work in those sections. This also meant that Plaintiff did not have employees to perform many job duties over which she continued to be responsible.

16. Despite these restrictions on Plaintiff's ability to perform her job duties, Defendant continued to increase Plaintiff's work responsibilities with new duties and she began to receive a disproportionate share of new work during this period with no increase in staff.

17. In January 2019, Plaintiff thought of applying for another position, Operations Flight Chief that was then held by Larry Holmes. At some point, she was talking to Mr. Holmes about her appraisal and he discouraged her from applying for his position by mentioning in her annual appraisal review that "you may want to accept the fact that you are not going to promote higher. This might be it for you."

A male, Scott Davis, later received the position and it was never advertised after Mr. Holmes retired.

18. In May 2019, Holmes advised Plaintiff she needs to be more social because it could impact her appraisals, but no other Branch Chief was offered similar advice as no other Branch Chief tried like Plaintiff to be more social.

19. In September 2019, Plaintiff, Davis (who was still her coworker at that time), and other coworkers were on a telephone conference. Davis was being disruptive, rude, and immature by interrupting Plaintiff and making unnecessary noises. She expressed her concern about Davis's behavior with her supervisor, Holmes, and politely asked Davis not to address her disrespectfully and make noises towards her. After that, Davis and Holmes laughed in front of Plaintiff and proceeded to call her a problem.

20. Plaintiff told them their behavior was unbecoming and not appreciated. This was the precursor for the behavior that Plaintiff endured from Davis after he was promoted to Holmes position in January, 2021.

21. In January 2020, Plaintiff was rated 3 out of 5 in the "Teambuilding" element of her annual appraisal with feedback she needed to be more social. This is inconsistent to the previous high marking appraisals she received from Holmes and fell on the heels of Plaintiff's complaints about Davis mocking and belittling her.

5

22. In March, 2020, Plaintiff and other employees of Defendant were working intermittently from work and home until March 2021. By that time, Davis had promoted.

23. In May 2020, Plaintiff requested a pay differential since she was taking on an excess workload and responsibilities. She submitted her documents to her supervisor, Holmes, at the time, but her request was not processed. She did not receive a reply or raise. However, when asked about the progress of Plaintiff's pay differential request, Holmes told her, several times, it was being handled.

24. Between May 2020 and January 2021, Plaintiff was strung along and learned in January 2021 from Davis, who was by January 2021, the supervisor, that her pay differential request had never been submitted. In talking about the pay differential with Davis, he told her "you did not deserve it but we will give it to you." However, she did not get the pay differential. Instead, she received a perfect appraisal score and received a bonus as a result of that appraisal, not a pay increase.

25. Around June 2020, Defendant was having issues keeping personnel in Communication Focal Point (CFP), SCOT, and SCX and would take trained employees from Plaintiff's branch and reassign them to these areas. This impacted Plaintiff's ability to perform all job duties under her preview.

26. Plaintiff came up with a solution to this problem to prevent robbing Peter to pay Paul and stated that the CFP should be combined with her branch.

6

Before Plaintiff was hired, the CFP, SCOT, and Plaintiff's branch were all one unit. When Plaintiff was hired Defendant separated the branch to multiple entities. The Superintendent of Operations, Terrell Breaux, who answered directly to Holmes and then Davis, told Plaintiff that her solution would give her "too much power" and it was rejected.

27. Between October and November 2020, Breaux and Second Lt Sydney Eismeier, who was under Plaintiff's supervision, implemented a leave approval process in SCOS without Plaintiff's awareness which greatly impacted, again, Plaintiff's ability to do her job.

28. Under this new system, Eismeier was permitted to approve leave for employees under Plaintiff's supervision and kept track of the time off with stickie notes stuck to her computer. Eismeier was essentially making all decisions about leave for between 40 to 70 (number fluctuated) employees under Plaintiff's supervision and Plaintiff was not notified in advance who was and was not going to be at work. This created chaos for Plaintiff.

29. Most importantly, Eismeier did not consult with Plaintiff as to the needs of the branch before making leave decisions and was unqualified to make decisions that greatly impacted the branch operations. This directly affected Plaintiff's duties and put her at risk of being disciplined for failing to have appropriate personnel available to perform essential functions for the branch. Plaintiff was supposed to be

involved in this decision making but was removed entirely from this process including discipline of employees who were abusing leave. This seriously undermined Plaintiff's authority over the employees over whom she had supervisory authority.

30. Defendant also undermined Plaintiff's authority between October 2020 and January 2021 when Breaux and MSgt Nathaniel Unruh omitted Plaintiff in the Employee Performance Report (EPR) process without her knowledge. This meant that Plaintiff was the second, rather than the first, level of review of employees under her supervision which again impacted Plaintiff's ability to supervise her employees.

31. Additionally, Breaux and Unruh skipped Plaintiff entirely in receiving and reviewing the EPR's for at least two months until Plaintiff determined that she was not receiving the EPR's and approached Breaux to stop excluding her from the employee evaluation process. However, even after she was receiving the EPR's, Breaux and Unruh edited her markings and ignored several of Plaintiff's opinions and recommendations for her subordinates.

32. In January 2021, Davis replaced Holmes. Once he obtained this position, Plaintiff's job took a downward spiral resulting in her constructive termination.

33. In February 2021, because of the actions described in part above, and the prior distain towards her by Davis, Plaintiff went to the EEO office to discuss

Davis and other events that were then occurring in the workplace such as employees not listening to her directives, which Plaintiff thought was the result of Davis and Breaux undermining her authority. Plaintiff also addressed her increase in workload, being skipped in the EPR approval process, and the leave issue discussed above.

34. On March 3, 2021, Davis told Plaintiff "people fear you and you are too confident. --- tone yourself down and stop thinking about being black so much." He told her that she needed to "cut up and giggle" so that people would feel better working around her.

35. On April 23, 2021, at 6:53 a.m., Plaintiff filed an informal complaint. On the same day at 11:11 a.m., Lt Cornel Scott A Weed sent an email to the EEO director, JAG, and Inspector General accusing Plaintiff of "overbearing control, lack of trust/empowerment, potential racial discrimination and potential restriction (from chain of command access)." Plaintiff was unaware of this communication and it fell immediately on the heels of her EEO complaint alleging gender and race discrimination. Holmes, Davis, Eismeier, Unruh and Breaux are all white. Eismeier is the only female.

36. After Plaintiff filed the informal complaint, Defendant made written statements and accusations of harassment against Plaintiff starting April 27, 2021. These rumors were of her being a bully and discriminating against non-minorities and began to circulate internal and external to the branch tarnishing Plaintiff's

reputation. As a result, her subordinates lost respect for her, did not follow orders, and were not amicable towards her anymore.

37. In May 2021, Defendant obstructed Plaintiff in performing her duties by denying her access to personnel documents that she previously had access to. Plaintiff needed these documents to keep track of personnel in her branch on a frequent basis since her branch was large.

38. Once she was given access to the documents again, information was redacted which was atypical.  Every time she requested access to records after she filed her informal charge of discrimination, she was questioned about the basis for her requests which hampered her ability to perform her duties.

39. On May 13, 2021, not too long after the Plaintiff's informal complaint was filed, the Base Chaplin began sending emails to Plaintiff's branch of "motivational quotes" that alluded to the issues the branch was alleged to have. These quotes were not religious, however, and were statements like "Blackhawk Down" and were not godly.  Plaintiff's branch was the only branch receiving these emails which continued until she could no longer take the stress and constant humiliation.  The frequent quotes were also haunting and appeared to be directed towards rallying Plaintiff's branch against her.

40. In June 2021, Plaintiff anonymously reported the work environment and another employee, Sara Shull, for bullying. Shull had been transferred into Plaintiff's branch in January 2021 and she was began to lie about Plaintiff.

41. On June 23, 2021, Defendant initiated an investigation into Plaintiff's branch to "identify major incidents from October 2020 to the present" including "grossly ineffective leadership, inconsistent/inequitable/unfair standards of expectations, perceptions of reprisal, retribution, or restriction, and any other behaviors that distract from unit readiness…and morale."

42. In August 2021, Davis denied Plaintiff's ability to attend training that was to occur on Plaintiff's personal time off.

43. On September 13, 2021, Defendant initiated an investigation against Plaintiff for timecard fraud, telework fraud, and bullying. She was not found for guilty for telework or timecard fraud. She was falsely found guilty of bullying after there were meetings with Plaintiff's supervisors with her subordinates, possibly planting ideas about Plaintiff in their minds.

44. In November 2021, Plaintiff was on FMLA medical leave due to stress from the workplace for 12 weeks. Defendant contacted her during her FMLA leave to sign an OPR (Officer Performance Report) for a subordinate employee, Nelson.  Other supervisors were available to complete this OPR and Plaintiff refused to sign it because the ratings were false.

45. Previously, Defendant allowed Davis to sign on Plaintiff's behalf since she was on extended medical leave. Some of the EPR/OPRs followed the same protocol except the one employee Plaintiff filed had a complaint against or was involved in the accusations against her, Nelson.

46. While on leave, Plaintiff submitted her resignation effecting on February 2, 2022 as she was unable to continue to perform her job duties under the circumstances described in part above.

47. In January 2022, while Plaintiff was still on FMLA leave, Davis lowered Plaintiff's appraisal to 3 out of 5 in all areas, which is inconsistent with previous appraisals.

48. Plaintiff returned to work on January 16, 2022.

49. In February 2022, Plaintiff return items like her paperwork and laptop. When she returned home, she was accused of stealing government property because they could not find the government laptop.

50. Plaintiff has retained the undersigned to represent her interests in this cause and is obligated to pay a fee for these services. Defendant should be made to pay said fee under the laws referenced above.

## COUNT I
## RACE DISCRIMINATION

51. Paragraphs 1 through 50 are realleged and incorporated herein by reference.

52. This is an action against Defendant for discrimination based upon race.

53. Plaintiff has been the victim of discrimination on the basis of her race in that she was treated differently than similarly situated employees of Defendant who are white and has been subject to hostility and poor treatment on the basis, at least in part, of Plaintiff's race.

54. Defendant is liable for the differential treatment and hostility towards Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.  Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated in same.

55. Defendant's known allowance and ratification of these actions and inactions created, perpetuated and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

56. In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of a race-based nature and in violation of the laws set forth herein.

57. The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant. The events set forth herein lead, at least in part, to Plaintiff's constructive termination.

58. Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon race.

59. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive/equitable relief including reinstatement.

## COUNT II
## GENDER DISCRIMINATION

60. Paragraphs 1 through 50 are re-alleged and incorporated herein by reference.

61. This is an action against Defendant for discrimination based upon gender.

62. Plaintiff has been the victim of discrimination on the basis of her gender in that Plaintiff was treated differently than similarly situated employees of

Defendant who are male and has been subject to disparate and poor treatment on the basis, at least in part, of Plaintiff's gender.

63. Defendant is liable for the differential treatment and hostility towards Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

64. Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated in same.

65. Defendant's known allowance and ratification of these actions and inactions created, perpetuated and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

66. In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of a gender-based nature and in violation of the laws set forth herein.

67. The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant. The events set forth herein led, at least in part, to Plaintiff's constructive termination.

68. Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon gender.

69. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive/equitable relief including reinstatement.

## COUNT III
## RETALIATION

70. Paragraphs 1 through 5 are re-alleged incorporated herein by reference.

71. This is an action against Defendant for unlawful retaliation after Plaintiff reported unlawful employment practices adversely affecting her

72. Defendant is an employer as that term is used under the applicable statutes referenced above.

73. The foregoing unlawful actions by Defendant were purposeful.

74. Plaintiff voiced opposition to unlawful employment practices during her employment with Defendant and has been the victim of retaliation thereafter.

75. The events set forth herein have led, at least in part, to adverse actions against Plaintiff.

76. Plaintiff is a member of a protected class because she reported unlawful employment practices and has been the victim of retaliation thereafter. There is thus a causal connection between the reporting of the unlawful employment practices and the adverse employment action taken thereafter.

77. As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, lost opportunities, loss of capacity for the enjoyment of life, and other tangible and intangible damages. These damages are continuing and are permanent. Plaintiff is entitled to injunctive/equitable relief including reinstatement.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

(a) that process issue and this Court take jurisdiction over this case;

(b) that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c) enter judgment against Defendant and for Plaintiff awarding damages to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d) enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of the state and federal laws enumerated herein;

(e) enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs; and

(f) grant such other further relief as being just and proper under the circumstances including reinstatement.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues set forth herein which are so triable.

Dated this 10th day of February, 2023.

                                                  Respectfully submitted,

                                                  /s/ Marie A. Mattox
                                                  Marie A. Mattox [FBN 0739685]
                                                  MARIE A. MATTOX, P. A.
                                                  203 North Gadsden Street
                                                  Tallahassee, FL 32301
                                                  Telephone: (850) 383-4800
                                                  Facsimile: (850) 383-4801

                                                  ATTORNEYS FOR PLAINTIFF