**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

| | |
|---|---|
| **CECILE JACKSON**,<br>Plaintiff,<br>**vs.**<br>**FRANK KENDALL, SECRETARY**,<br>United States Department of the Air Force,<br><br>Defendants. | Civil Court Case No:<br>**3:23-cv-03881-MCR-HTC** |

**PLAINTIFF'S MOTION TO RECONSIDER 59(e)**

**COMES NOW**, Plaintiff Cecile Jackson, appearing pro se, and respectfully moves this Court to reconsider its Order Granting Summary Judgment in favor of the Defendant, entered on September 30, 2024. This Motion for Reconsideration is brought under Rule 59(e) of the Federal Rules of Civil Procedure to correct significant legal and factual errors in the Court's judgment. These errors, if left uncorrected, constitute manifest injustice and deny Plaintiff's rights under Title VII of the Civil Rights Act, due process, and procedural fairness.

## I. INTRODUCTION

### A. Pro Se Challenges

Given the time constraints, Plaintiff respectfully acknowledges that this motion may not be as complete or streamlined as intended. Plaintiff requests the Court's leniency in considering this submission. Plaintiff asks that her claims receive thorough review to ensure that procedural limitations do not prevent consideration of her substantive arguments under Rule 59(e).

**B. Motion under Rule 59(e)**

This motion for reconsideration under Rule 59(e) requests the Court to reexamine its summary judgment due to critical legal and factual errors that misinterpret the scope and impact of the retaliatory actions faced by Plaintiff following her EEO complaint. Senior leaders at Eglin Air Force Base coordinated an orchestrated campaign of retaliation, using their position and authority to retaliate, harass, and create a hostile work environment compelling compel Plaintiff's constructive discharge.

The Court's ruling overlooked substantive evidence of adverse actions, including procedural misconduct through altered documents, pretextual investigations, and carefully timed retaliation, mischaracterizing these as routine rather than recognizing their cumulative effect in creating a hostile work environment.

Due to these oversights and the improper dismissal of significant factual disputes, Plaintiff seeks reconsideration to ensure a fair trial where a jury can evaluate the credibility issues, procedural misconduct, and cumulative retaliatory actions central to this case.

## II. BACKGROUND AND TIMELINE OF RETAILATION

### A. Plaintiff's Unblemished Record and Contributions Prior to EEO Complaint

#### 1. Summary of Professional Record and Recognition

Prior to April 23, 2021, Plaintiff had a strong record of exemplary performance and leadership within the 96CS and her branch. Over her tenure, Plaintiff's contributions were acknowledged through multiple awards, and specific commendation from the MSG Commander for her "altruistic" and team-building leadership style [Ex. 1, 2018 - Award 3rd Qtr Civ], [Ex. 2 , 2019 - Civilian of the Year Award], [Ex. 3, 2021 02 25, Email, Weed - Front Line]. Weed and other leaders within the 96th Communications Squadron frequently sought Plaintiff's expertise on leadership and DEIA initiatives, especially after George Floyd's death. She was selected to lead a squadron-wide DEIA briefing, noted for fostering purpose-driven work across the squadron, and her ongoing efforts contributed to a positive climate within her team [Ex. 4, 2020 07 02 - Email, Weed and Pl, DEIA], [Ex. 5, 06 18 1030 - COMPTON - JACKSON - All Call]. These accolades

abruptly followed by a stark shift in the workplace climate upon Plaintiff's engagement in protected EEO activity.

**2. Key DEIA Leadership and Initiatives**

Plaintiff's expertise in DEIA earned her pivotal roles, including appointment as Special Emphasis Program Manager for Eglin AFB around October 2020 and election as President of the Eglin Air Force Women's Group shortly thereafter. Following her EEO complaint, Plaintiff experienced social ostracism and was excluded from places where she had previously been welcomed. Eventually, finding her presence a distraction from the Women's Group's objectives, Plaintiff reluctantly stepped down from her leadership role [Ex. 6, 2021 10 05 - Email - FWP Mgr].

**3. Technical Contributions and Security Impact**

Plaintiff's role also included notable technical contributions to Air Force-wide security. She led a project identifying a critical security vulnerability affecting mobile devices across the service, coordinating mitigation efforts with the Air Force Enterprise Configuration Management Office. The success of this project underscored Plaintiff's reputation as a trusted technical leader, an aspect that further contextualizes the significance of her contributions and her established credibility within the squadron.

### B. 96th Communications Squadron Background/Climate

Plaintiff's tenure in the 96CS exposed a workplace culture at odds with Title VII's protections against race-based discrimination and hostility (42 U.S.C. § 2000e-2(a)). As the only Black female leader in her squadron, Plaintiff faced racially biased disciplinary practices, resistance to DEIA initiatives, and a culture of retaliatory hostility that escalated in response to her protected activities

#### 1. Resistance to DEIA Efforts and Retaliatory Climate

In response to the George Floyd incident, Plaintiff led a DEIA discussion directed by the base general to foster inclusivity. Significant resistance within the squadron, including union complaints aimed at halting the discussion, highlighted a deeper aversion to DEIA initiatives and heightened the hostility Plaintiff faced. This resistance added to the adversarial climate and intensified following her EEO complaint [Ex. 7, 2020 06 05 - Pl to Weed - DEIA Amn Comments].

#### 2. Timeline of Retaliatory Actions and Racial Hostility Leading to Constructive Discharge

The following are included to frame the environment preceding Plaintiff's EEO activity:

- **January 2021:** Plaintiff's previous supervisor, Larry Holmes, retired; Deputy Directory, Mr. Font passed way, Sarah Shull arrived to the 96CS

assigned to Plaintiff's branch, and Scott Davis assumes Holmes' position as Plaintiff's supervisor (reassigned by Weed).

- **February 2021**: Davis makes racially insensitive remarks, advising Plaintiff to "stop thinking about being Black" "tone herself down" "she is intimidating" "people fear her" and to make others more comfortable Plaintiff needed to "cut-up and giggle" at work—comments reinforcing harmful stereotypes [Ex. 8, 2021 03 03 - Davis Giggle Email]
- **February 17, 2021** – Plaintiff's initial EEO contact. The actions of 96CS leaders continued. Plaintiff's informal contact with the EEO office marks her first protected activity under 29 C.F.R. § 1614.105. The Court overlooked this initial contact as protected activity, despite its procedural significance [Ex. 9, 2021 02 17 - Email, Inital EEO Contact]

### 3. Relevance to Motion for Reconsideration

The Court's summary judgment may have undervalued the racial and retaliatory hostilities Plaintiff endured, including disparate disciplinary practices and DEIA resistance. These elements are essential to evaluating Plaintiff's hostile work environment and retaliation claims under Title VII. Her experiences, marked by racial insensitivity, exclusionary actions, and scrutiny, warrant a comprehensive review under Rule 59(e).

## III. METICULOUSLY COORDINATED PLAN OF RETALIATION BY SENIOR LEADERS

April 23, 2021, marks a critical day in which a series of retaliatory actions began within hours of Plaintiff's protected EEO complaint. This day stands out for setting in motion a coordinated response that directly impacted Plaintiff's credibility, career, and work environment, warranting a focused review under Rule 59(e) for reconsideration of the Court's judgment.

### A. Central Aspects of April 23, 2021

1. **Immediate Temporal Proximity**. Plaintiff's EEO complaint at 6:53 AM triggered a near-immediate sequence of adverse actions, establishing a clear causal link between her protected activity and the ensuing response. The temporal proximity suggests these actions were retaliatory, contravening Title VII protections.

2. **Coordinated Retaliatory Planning.** By noon, senior officials—including EEO Director Anthony Avance, Inspector General Paul Clark, and Lt. Col. Weed—had convened, discussing fabricated complaints and punitive investigations. Weed's emails suggested punitive actions and included phrases like "piling onto this one," indicating a collective intent to undermine Plaintiff's position.

3. **Blueprint for Sustained Retaliation.** Inspector General Clark's guidance provided a detailed framework for ongoing retaliation. His recommendations to conduct a "climate inquiry," solicit anonymous complaints, and initiate a Command-Directed Inquiry (CDI) were executed immediately continuing over the next months, closely aligning with Plaintiff's subsequent hostile work environment experience, illustrating a coordinated effort to "discipline" the Plaintiff for EEO activity.

## A. Escalating Retaliatory Adverse Actions Timeline

The following events will be organized single-spaced, structured to highlight organized time and flow.

### 1. April 23, 2021: Key Retaliation Events

**6:53 AM:** Plaintiff officially files an informal EEO complaint, initiating protected status under federal anti-retaliation standards

**7:24 AM:** EEO Counselor confirms receipt, acknowledging Plaintiff's protected activity.[Ex. 10, 2021 04 23 - First Claim Filed - 8I1M2-100371]

**Morning:** EEO Director gave Weed an unofficial "courtesy call" notification about Plaintiff's EEO complaint, setting an immediate tone for a coordinated response. This notification set the stage for pretext and immediate retaliatory actions, as the same day, Lt. Col. Weed

emailed multiple leaders, including the EEO Director and Plaintiff's EEO counselor, aligning leadership on next steps.

Conflicting testimony exists surrounding the occurrence of the courtesy call, which directly precedes a suspicious timeline of events and violates EEOC Management Directive 110 (MD-110), which emphasizes impartiality and non-interference by EEO officials [Ex. 11, Avance Sworn Stmt, p8-9, lines 18 - 4], [Ex. 12, 23 11 27, Depo., Weed, pg. 12-13, lines 5 – 14], [Ex. 13, MD-110 Chapter 6, pg. 3, Ch. 6, Sec III, A. para. 2].

**Morning:** Scott Davis contacts the EEO Director, and they plan to add unjustified remarks to the Plaintiff's midterm appraisal. to discuss adding remarks to Plaintiff's midterm appraisal [Ex. 14, 2022 05 20 - Davis Decl, pg, 4, ques 3, para4].

**11:11 AM**: Lt Col Weed emails "Need a Vector" to Eglin AFB senior leaders including EEO Director Anthony Avance, Plaintiff's EEO Counselor Eunice Porter, IG Inspector Paul Clark Sr., Judge Advocate Frank Shelly, and Scott Davis, Plaintiff's supervisor and RMO. The contents of this email would later be altered, submitted to investigations, violating procedural fairness and demonstrated a clear retaliatory intent.

Later, however, Weed submitted an altered version of this email. Key phrases that pointed to retaliatory intent were removed, including "Thank you for piling onto this one" and "follow-on supervisor/command action." Additionally, the timestamp was modified. These changes sanitized the email of language suggesting bias and retaliatory motive, violating impartiality requirements under MD-110 and likely breaching 18 U.S.C. § 1519 by altering records pertinent to federal investigations.

Original Email: [Ex. 15, 2021 04 23 - Need a Vector, p. 5].

Falsified Email: [Ex. 16, 2021 04 23 - Need a Vector Falsified]

Comparison Email:[Ex. 17, Comparison Email]

**12:10 PM**: Inspector General Paul Clark's Recommendations: Clark's response outlined steps for addressing the alleged climate issue, suggesting a Command-Directed Investigation (CDI) based on the forthcoming IG complaint. As only Plaintiff's complaint qualified as an IG complaint, Clark's recommendation appears to frame retaliatory measures in the guise of procedural investigations. Subsequent actions followed Clark's "blueprint" almost verbatim.

2. **April 26, 202: RMOs notified**

RMOs Officially Notified. The official notifications were issued, and Plaintiff's EEO counselor followed up, stating, "Good morning Ms. Jackson, just wanted to know that I emailed your commander and the responsible management officials." This message appears redundant, as the counselor was aware of the prior informal notifications, underscoring the orchestrated nature of this response. **[Ex. 18, 2021 04 26 - RMOs Notified]**

3. **April 27, 2021: Memo for Record (MFR) Campaign Initiates.** Six (6) MFRs target Plaintiff's leadership and work environment, despite a lack of substantiated complaints prior to this.

4. **April 29:** Two MFRs against Plaintiff

5. **May 2021: Cyber-Bullying Begins and MFRs continue**

6. **May 13 – June 17:** Retaliation and harassment intensifies. First of ~ 18 Innuendo-laced Emails. A total of 15 MFRs and Innuendo-laced emails provided [Ex. 19, 2021 04 xx, MFRs],

7. **June 3:** Wolf-Pack Mentality email. The only email with RMOs cc'd "The strength of the Pack is the Wolf, and the strength of the Wolf is the Pack," reinforces the theme of collective targeting. This was immediately followed by additional MFR submissions [Ex 29, SCOS Emails, pg. 4]

8. **June 4-17:** Continued MFR Submissions

9. **June 23:** Informal Inquiry Initiated by Col. Black. Initiating the inquiry aligned with Clark's initial "climate assessment" recommendation, establishing a veneer of impartiality while advancing the campaign against Plaintiff.

10. **July – August:** Continued Targeted Communications and Email Despite Plaintiff's requests to cease communications, Chaplain Nelson's emails persisted, indicating disregard for her concerns and contributing to the hostile work environment.

11. **September 13**: EEO Claim Amended/Accepted and **CDI Initiated**. Command Directed-Investigation Initiated - The CDI is initiated, allegedly to assess the climate but clearly targeting Plaintiff. The CDI further underscores a pattern of escalation and retaliation based on Plaintiff's EEO activity. (AFI 90-301, EEOC MD-110, and Title VII protections against retaliation). [Ex. 21, CDI]

12. **October 2021: January 2022**: Plaintiff took FMLA leave due to mental health issues from prolonged retaliation, further supporting her claim for constructive discharge under Green v. Brennan standards; David Willcox, 96CS Deputy Director, calls multiples times during this period. Hang-up calls continue to the Plaintiff.

13. **December 2021: Constructive Discharge.** Plaintiff resigned due to unrelenting harassment, which had become intolerable under reasonable conditions. Plaintiff asks for harassing emails to stop and no contact with Shull or other RMOs; the requests are not honored.

14. **January 19**: Plaintiff returns to work to out-process following FMLA leave.

15. **January 21:** Shull visits Plaintiff's work area/Emails continue: "There's a scene in the final climax in the movie, The Gladiator, where after the main character is stabbed in his ribs, he was expected to fight to the death with an evil emperor [Ex. 28, 2022 01 24, Final Climax]

16. **January 19-21, 2022** – Harassment During Out-Processing. Plaintiff experiences taunting and harassment while out-processing. Willcox offers to escort her for safety, underscoring the hostile environment.

This timeline demonstrates a sustained, retaliatory trajectory immediately following Plaintiff's protected EEO activities, closely mirroring the strategy outlined by Paul Clark in his April 23, 2021, recommendations. Each incident—particularly the MFRs, hostile emails, and Clark's recommended CDI—illustrates a coordinated effort to create a hostile work environment. Given the temporal proximity and escalating nature of these actions, Plaintiff requests reconsideration under Rule 59(e), as these events constitute significant, substantive grounds that the Court's analysis inadequately addressed. Under Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53 (2006), retaliatory actions need not be limited to formal employment decisions. Any actions that would dissuade a reasonable person from exercising their rights can constitute retaliation.

## IV. INSPECTOR GENERAL PAUL CLARK'S RECOMMENDATIONS: A BLUEPRINT FOR COORDINATED RETALIATION

From the moment Plaintiff exercised her protected rights by contacting the EEO office, senior leaders across Eglin Air Force Base—individuals in positions of

power who were entrusted to uphold military ethics and regulatory standards—engaged in a coordinated campaign of retaliation.

The recommendations of Eglin AFB Inspector General Paul Clark laid the strategic foundation for a carefully orchestrated retaliation campaign against Plaintiff, crafted to shield senior officials from accountability while discrediting her under the guise of addressing "workplace climate concerns." Clark's guidance, offered on April 23, 2021, was followed almost verbatim by senior officials and provided a roadmap to circumvent formal investigative safeguards.

The campaign began with an improper courtesy call from EEO Director Anthony Avance to Lt. Col. Weed, who promptly involved Clark. Rather than suggesting an impartial Command Directed Investigation (CDI), Clark advised, "We would strongly recommend that a Command Directed Climate Inquiry be conducted and NOT a Command Directed Investigation, as that (CDI) kicks in the mandatory compliance... from which you could take appropriate administrative or disciplinary action." This advice signaled Clark's intent to sidestep standard protocols in favor of a more discretionary approach, allowing officials to "take appropriate administrative or disciplinary actions" just as requested by Lt Col

Despite Clark's guidance to avoid a CDI, a formal CDI was later conducted on the pretext that an Inspector General's complaint had been filed against Plaintiff. However, the only documented IG complaint is Plaintiff's own, and MSgt Sarah Shull, whom Col. Black claimed as the source, denies filing an IG complaint. This discrepancy reveals a fabricated justification for the CDI, further exposing the retaliatory motives at play.[Ex. 23, 2021 04 24 - Shull Decl pg. 5, last question], [Ex. 24, 2022 04 14 - Black Decl, pg. 6, q. 3]

[Ex. 25, 2022 05 20 - Shull Decl2, pg. 2, last question]

The coordinated nature of this campaign is evident in Lt. Col. Weed's response, thanking others for "piling onto this one," which confirms that these actions were neither objective nor routine. Instead, they were shaped by a collective goal to punish Plaintiff for exercising her rights, following Clark's blueprint for retaliation.

**A. Inspector General's Pretextual Strategic Blueprint for Retaliation**

Clark's guidance provided a step-by-step framework aimed at disciplining Plaintiff without triggering procedural safeguards. He advised using a "Command Directed Climate Inquiry" (CDCI) instead of a Command Directed Investigation (CDI) to bypass formal Air Force Manual (AFMAN) compliance, thereby enabling adverse

actions with minimal oversight. This approach demonstrates Clark's intent to create a punitive environment while avoiding the objectivity required in formal investigations [Ex. 15, 2021 04 23 - Need a Vector, pp. 4-5)

**B.** Execution of Retaliatory Measures:

1. EO Climate Inquiry – Clark recommended leveraging an EO inquiry to solicit adverse, unsubstantiated feedback about Plaintiff without triggering formal investigation requirements.

2. Anonymous Complaints – Clark's strategy encouraged leadership to gather generalized complaints from "junior" employees to support the retaliatory actions without providing Plaintiff an opportunity to challenge these unsubstantiated allegations.

3. Circumventing Standards – Clark's recommendation to conduct a CDCI instead of a CDI allowed officials to bypass AFMAN and AFI standards for impartiality, moving forward with disciplinary actions outside of formal compliance protocols.

**C. Violations of Federal and Air Force Regulations**

The senior leaders' actions—driven by Clark's blueprint—violated numerous regulatory standards, including impartiality mandates in 29 C.F.R. § 1614.105,

MD-110, and AFI 51-201. These standards are in place to prevent retaliation following EEO activity, yet leadership misused the CDCI to compile unsubstantiated complaints against Plaintiff, ultimately constructing a hostile work environment.

### D. The Role of Lt. Col. Weed and the Falsified Email

Lt. Col. Weed's modified email, which omitted key statements and changed timestamps, was crucial in creating a pretextual narrative against Plaintiff. These alterations show an intent to control the investigatory narrative and conceal retaliatory motives.

### E. Systematic Campaign of Retaliation

The coordinated actions, beginning with Avance's courtesy call and executed through Clark's retaliatory blueprint, reveal a clear abuse of authority aimed at punishing Plaintiff for her EEO activity. These actions, largely unaddressed in the Court's judgment, meet the standards for constructive discharge and justify reconsideration under Rule 59(e) based on overlooked evidence of retaliation, procedural misconduct, and regulatory breaches.

This orchestrated campaign—rooted in procedural violations and retaliatory intent—was a systematic abuse of power by senior officials at Eglin AFB.

Reconsideration under Rule 59(e) is warranted to address these serious oversights, as the cumulative actions led to a hostile environment, undermining Plaintiff's rights under Title VII.

## V. LEGAL AND FACTUAL ERRORS

### A. Misapplication of Retaliation and Discrimination Standards

The Court narrowly interpreted Title VII standards, overlooking the cumulative impact of discriminatory and retaliatory actions. Title VII mandates a holistic analysis of adverse actions, especially in hostile work environments, as seen in Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006), where even actions not directly impacting rank or pay can deter protected activity and be considered retaliatory.

### B. Misinterpretation of Temporal Proximity and Adverse Action Criteria

The Court's analysis did not fully recognize the close timing between Plaintiff's EEO complaint and the adverse actions that followed. Temporal proximity is key in proving retaliation, as shown in Clark County Sch. Dist. v. Breeden, 532 U.S. 268 (2001), which supports causation when adverse actions occur soon after protected activity.

### C. Constructive Discharge Standard Interpretation

Plaintiff's experience met the intolerable conditions standard for constructive discharge, as defined in Pennsylvania State Police v. Suders, 542 U.S. 129 (2004). The Court did not fully consider the cumulative hostile actions, intensified scrutiny, and racial comments that contributed to a work environment a reasonable person would find intolerable.

**D. Acceptance of Altered and Missing Documents**

The Court's analysis relied on incomplete and altered evidence, such as missing "Need a Vector" emails, which critically impacts the case's context. Missing evidence obstructs a comprehensive review, making summary judgment premature without a full factual basis.

**E. Credibility Issues Requiring Jury Determination**

Credibility disputes here are key, as outlined in Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), where credibility determinations are reserved for juries. Given conflicting accounts and altered statements, summary judgment is inappropriate.

**F. Factual Oversights and Misinterpretations**

The Court overlooked key facts, viewing incidents in isolation rather than as a sustained campaign of adverse actions, leading to a hostile work environment. This misinterpretation impacted the judgment, necessitating reconsideration.

### G. Grounds for Reconsideration Under Rule 59(e)

Rule 59(e) motion seeks correction of clear legal or factual errors to prevent injustice. Misapplication of legal standards, combined with overlooked evidence, meets this threshold, warranting a full review to ensure fair trial proceedings.

### H. Errors in Summary Judgment Application

Under Fed. R. Civ. P. 56(a), summary judgment is granted only if no genuine issues of material fact exist. Here, unresolved credibility issues and factual disputes justify reconsideration, as a jury could reasonably find in Plaintiff's favor.

### I. Title VII Retaliation Standards Misapplied

The Court's analysis underestimated the adverse actions Plaintiff faced post-EEO filing. Title VII protects against cumulative retaliation; Plaintiff's evidence supports an inference of retaliatory intent, aligning with Title VII standards.

### J. Constructive Discharge Threshold Misinterpreted

The hostile and retaliatory conditions that led Plaintiff to resign meet the constructive discharge standard, which the Court overlooked. Recognizing the

cumulative adverse actions is crucial to accurately assessing Plaintiff's claim under Green v. Brennan, 578 U.S. 419 (2016).

### K. Misinterpretation of "Adverse Action" in Retaliation Claims

The Court's assessment disregarded Title VII's recognition that adverse actions encompass a range of retaliatory measures, not limited to formal employment decisions like termination. Burlington Northern v. White, 548 U.S. 53 (2006), expanded adverse action to include any act that might dissuade a reasonable worker from pursuing EEO complaints.

### L. Hostile Work Environment and Constructive Discharge Mischaracterization

- Constructive discharge claims hinge on whether work conditions were made so intolerable that a reasonable person would feel compelled to resign (Pennsylvania State Police v. Suders, 542 U.S. 129 (2004)). Plaintiff experienced sustained retaliatory hostility following her EEO complaint, marked by racially charged comments, isolation, and escalation in workload—all elements constituting a hostile work environment under Title VII.
- The Court's oversight of these hostile conditions as routine workplace issues mischaracterized Plaintiff's constructive discharge claim. A jury must

evaluate whether Plaintiff's resignation was a foreseeable consequence of the intolerable environment created by Defendant's retaliatory actions.

## M. Undated Comment Cards and Credibility of Defendant's Evidence

### 1. Reliance on Unverified, Undated Statements

- Defendant's heavy reliance on undated, unverified comment cards from subordinates reflects a lack of procedural integrity. Statements from Colonel Weed, already shown to be contradictory, further diminish the credibility of these undated comments used to assess Plaintiff's conduct. The absence of dates or firsthand verification leaves the objective reliability of these statements in question, [Ex. 30, Undated Cards]
- Legal Standard: Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000) reinforces that credibility concerns around undated or unverified documents warrant jury evaluation. Defendant's reliance on these questionable statements, without adequate context or authentication, undermines the fairness of summary judgment and should be reconsidered under Rule 59(e).

## N. Legal and Factual Errors in the Application of Retaliation and Discrimination Standards

### 2. Failure to Recognize a "Convincing Mosaic" of Retaliation

- The Court's segmented analysis failed to consider the cumulative adverse actions following Plaintiff's EEO complaint as part of a broader retaliatory pattern. Plaintiff's exclusion from meetings, increased workload, and negative feedback collectively establish a "convincing mosaic" of retaliatory hostility under Title VII, as endorsed in Smith v. Lockheed-Martin Corp., 644 F.3d 1321 (11th Cir. 2011).
- Argument: Plaintiff's post-EEO experiences, including exclusion from decision-making processes and verbal reprimands, form a coherent narrative of retaliatory conduct warranting reconsideration. This broader pattern of hostility satisfies Title VII's standards for retaliation and should not have been dismissed at summary judgment.

**3. Temporal Proximity as Evidence of Retaliation**

- The proximity between Plaintiff's EEO filing and the swift succession of adverse actions substantiates retaliatory intent. According to Clark County Sch. Dist. v. Breeden, 532 U.S. 268 (2001), close temporal proximity between protected activity and adverse action supports an inference of causation, a factor the Court overlooked in its analysis.

- Plaintiff's timeline evidences immediate retaliatory measures, including the CDI investigation initiated without procedural justification, which amplifies the inference of retaliation under Title VII.

## O. Manifest Injustice and the Right to a Fair Jury Trial

### 1. Reliance on Tampered Evidence and Procedural Misconduct

- Given the procedural irregularities and reliance on altered documents, the Court's judgment was compromised, resulting in manifest injustice. Hazel-Atlas Glass Co. mandates corrective action when material evidence is tainted by fraud, as here, where tampered evidence was used to justify adverse actions against Plaintiff.

### 2. Denial of Jury Trial on Credibility Issues

- The unresolved credibility disputes, compounded by procedural misconduct and falsified evidence, warrant jury assessment, as these material facts are central to Plaintiff's claims of retaliation and hostile work environment. Summary judgment is inappropriate where significant factual disputes remain unresolved, as courts must refrain from weighing evidence (see Anderson v. Liberty Lobby, Inc., 477 U.S. at 255).

- Argument: A jury is best suited to assess the intent and credibility underlying Defendant's actions and procedural decisions, especially in light of the pretextual justifications and contradictions among sworn testimonies.

For these reasons, Plaintiff respectfully requests that the Court vacate its Order Granting Summary Judgment and reconsider Plaintiff's claims under Rule 59(e), addressing the procedural, factual, and credibility errors that hindered a fair and impartial judgment. Only a jury can adequately evaluate the material issues of fact, ensuring that Defendant's conduct and Plaintiff's retaliation and hostile work environment claims are properly adjudicated.

### P. Credibility Issues and Procedural Misconduct Demand Jury Evaluation

#### 1. Conflicting Testimonies Under Oath

- Conflicting sworn testimonies from Lt. Col. Weed and EEO Director Avance concerning the handling of Plaintiff's EEO claim reveal material credibility issues. Specifically, Weed's admission of a "courtesy call" contradicts Avance's sworn statement denying such an action. This discrepancy is critical, as it suggests Weed may have taken preemptive retaliatory steps, undermining procedural impartiality mandated by MD-110.

- Legal Standard: Courts may not resolve credibility issues at the summary judgment stage, as credibility determinations are the exclusive purview of a jury (see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). Here, the conflicting narratives surrounding the handling of the EEO complaint directly impact the interpretation of Defendant's intent and actions, underscoring the necessity for a jury to assess witness credibility.

**2. Tampered Evidence and Allegations of Fraud**

- Plaintiff presents evidence of altered documentation, including the April 23, 2021 email, which was subsequently falsified to obscure incriminating details. This email exchange occurred on the same day Plaintiff filed her EEO complaint, and Weed's altered submission omits critical context, significantly impacting Plaintiff's case. Given Weed's sworn testimony attached to this falsified email, a jury must determine the extent of deception and its implications.
- Supporting Case Law: When fraudulent or tampered evidence is introduced, courts are mandated to take corrective actions to preserve the integrity of proceedings (see Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944)). Rule 59(e) permits reconsideration when manifest injustice

arises from tainted evidence, as here, where the altered email formed part of the evidentiary basis for summary judgment.

**Q. Violations of Air Force Instructions (AFIs) and DoD Policies Illustrate Retaliatory Intent**

Defendant's actions breached specific Air Force Instructions (AFIs) and DoD directives intended to safeguard equal opportunity and whistleblower protections, which substantiate Plaintiff's hostile work environment and retaliation claims:

**1. AFI 36-2706 (Equal Opportunity Program):**

Defendant failed to uphold protections against retaliation for employees filing EEO complaints, as demonstrated by Plaintiff's exclusion from meetings and undue scrutiny. AFI 36-2706 mandates adherence to equal opportunity standards, and Defendant's actions represent a clear violation of this policy.

**2. DoD Directive 7050.06 (Whistleblower Protections):**

Plaintiff's protected complaints prompted a pattern of retaliatory actions, violating whistleblower protections under DoD Directive 7050.06. Defendant's failure to follow procedural standards, as well as the commingling of EEO and CDI complaints, underscores a disregard for Plaintiff's rights and the fair treatment required by DoD policy.

**R. Misinterpretation of Genuine Issues of Material Fact**

- Material factual disputes, especially those involving credibility and intent, must be assessed by a jury. Conflicting testimonies from Lt. Col. Weed, EEO Director Avance, and other key individuals raise credibility issues about the retaliatory actions following Plaintiff's EEO complaint.
- Courts are precluded from resolving these credibility issues at the summary judgment stage (Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). The Court's determination, which dismissed these factual disputes, misinterpreted the nature of genuine issues of material fact and overstepped the role of the jury.

## VI. LEGAL STANDARDS AND APPLICABLE PRECEDENTS

### A. Standard for Summary Judgment

Summary judgment is warranted only where the moving party demonstrates there is "no genuine dispute as to any material fact" and they are "entitled to judgment as a matter of law" (Fed. R. Civ. P. 56(a)). However, when credibility, intent, and subjective factors like retaliatory motive are in dispute, summary judgment is inappropriate (Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). Courts have held that disputes involving credibility and motive are inherently unsuitable for summary judgment as they require jury evaluation (Morrison v. Amway Corp., 323 F.3d 920, 924 (11th Cir. 2003)).

In such cases, the Court must view all evidence in the light most favorable to the non-moving party, drawing "all justifiable inferences" and resolving "all reasonable doubts" in their favor (Everett v. Napper, 833 F.2d 1507, 1510 (11th Cir. 1987)). Since Plaintiff's claims involve genuine disputes regarding Defendant's motives and credibility, summary judgment was not appropriate. Reconsideration under Rule 59(e) is necessary to correct this misapplication of summary judgment standards.

## B. Application of Title VII Standards

### 1. Adverse Employment Actions under Title VII

Defendant's interpretation of adverse actions as requiring tangible employment actions, such as termination, is overly narrow. Title VII encompasses a broader range of actions that impact an employee's conditions and privileges of employment, extending protection to any conduct likely to deter a reasonable person from pursuing protected activity (Burlington Northern v. White, 548 U.S. 53 (2006)). Plaintiff experienced materially adverse conditions, including:

- Negative performance appraisals affecting compensation
- Increased workload and denial of career-advancing training opportunities
- Exclusion from decision-making processes

These changes constitute adverse employment actions under Title VII and have a cumulative retaliatory impact that the Court failed to assess fully. Under Hickson Corp. v. N. Crossarm Co., even seemingly minor adverse conditions can impact Plaintiff's role if they permit a reasonable inference of retaliation.

### 2. Cumulative Retaliation and "Convincing Mosaic" of Discriminatory Intent

Title VII claims do not require a strict comparator analysis where a "convincing mosaic" of retaliation can be demonstrated through circumstantial evidence (Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011)). Here, Plaintiff's experience of escalating negative treatment after her EEO complaint—through evaluations, workload, and resource restrictions—creates a coherent narrative suggesting a pattern of retaliatory conduct. Reconsideration is warranted to assess this cumulative pattern fully.

### 3. Title VII Retaliation and Temporal Proximity

Plaintiff's retaliation claim aligns with Burlington's protections, which apply to any adverse actions likely to deter protected activity. The Court failed to consider the immediate temporal proximity between Plaintiff's EEO complaint and the swift series of adverse actions, which under Clark County Sch. Dist. v. Breeden, may

indicate retaliatory intent. The 285-day period of escalating hostile actions substantiates a clear retaliatory motive warranting jury assessment.

### 4. Hostile Work Environment and Constructive Discharge

Hostile work environment claims under Title VII require evidence of severe or pervasive conduct altering employment terms. Defendant's orchestrated campaign of retaliatory actions—including hostile communications, solicited negative statements, and procedural breaches following Plaintiff's EEO complaint—created conditions so intolerable that Plaintiff had no reasonable alternative but to resign. This meets the constructive discharge standard outlined in Suders and Green, justifying reconsideration to correct the Court's mischaracterization of these conditions as routine.

## VII. GROUNDS FOR RECONSIDERATION

Plaintiff respectfully moves this Court to reconsider its Order granting summary judgment on the grounds of unresolved factual disputes, procedural misconduct, credibility issues requiring jury assessment, and significant misinterpretations of Title VII standards. Under Rule 59(e), reconsideration is warranted to correct clear errors of law, prevent manifest injustice, or consider new or overlooked evidence. Banister v. Davis, 590 U.S. __, 140 S. Ct. 1698, 1703 (2020). Here, Plaintiff argues that reconsideration is necessary to uphold procedural fairness, ensure

accurate application of legal standards, and permit a jury to assess material issues of fact.

## A. Credibility Determinations

The Court's summary judgment ruling improperly dismissed crucial credibility disputes that, under Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), are exclusively within the jury's domain. Courts are prohibited from weighing evidence or making credibility determinations at the summary judgment stage, particularly where conflicting testimonies and tampered evidence exist.

### 1. Conflicting Testimonies Regarding Retaliatory Actions

Conflicting sworn statements by Lt. Col. Weed and EEO Director Avance underscore material credibility issues that impact the interpretation of Defendant's actions. Lt. Col. Weed acknowledged a "courtesy call" regarding Plaintiff's EEO complaint, while EEO Director Avance denied any such call, stating "I would not do that" and "That is not true." These inconsistencies raise credibility concerns, as they suggest Lt. Col. Weed may have acted with retaliatory intent, using the courtesy call to initiate preemptive actions against Plaintiff. This discrepancy violates procedural neutrality as mandated by EEOC MD-110 and requires jury evaluation to determine credibility and intent.

**2. Tampered Evidence and Allegations of Fraud**

Plaintiff presents evidence that Defendant altered critical documentation—specifically the April 23, 2021 email—falsifying details that omit adverse information about Lt. Col. Weed's conduct. Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944), mandates corrective action when fraud or falsified evidence materially taints the judicial process. Given the direct influence of the altered email on the judgment and Weed's sworn testimony supporting it, a jury must evaluate the credibility and authenticity of this evidence to ensure procedural integrity.

**3. Undated Comment Cards and Their Procedural Reliability**

Defendant's heavy reliance on undated comment cards from subordinates in assessing Plaintiff's conduct lacks procedural integrity. Given Lt. Col. Weed's documented credibility issues, using unverified, undated statements further diminishes the reliability of Defendant's evidence. Courts have held that credibility concerns undated or unverified documents warrant jury review. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000). Defendant's lack of context or firsthand verification for these statements taints their objectivity, making summary judgment inappropriate.

**B. Procedural Misconduct and Bias in the CDI Investigation**

Defendant's handling of the Commander-Directed Investigation (CDI) into Plaintiff's conduct reveals procedural misconduct that compromises the fairness of this investigation, warranting reconsideration.

**1. Pretextual CDI Investigation and Misrepresented Basis for IG Complaint**

Defendant's initiation of the CDI investigation—allegedly in response to an IG complaint by MSgt Shull—is not corroborated by documented evidence. MSgt Shull testified that her complaint was an EEO complaint, not an IG complaint, directly contradicting statements made by Col. Black and IG Inspector Clark to justify the CDI. This contradiction raises serious doubts regarding the investigation's legitimacy, supporting Plaintiff's claim that the CDI was a pretextual, retaliatory act following her EEO complaint.

**2. Improper Basis for Investigator Selection**

Col. Black's admission that he appointed a Black female investigator solely based on racial alignment, rather than qualifications, violates procedural standards under AFI 36-2706 and DoD Directive 7050.06. Title VII mandates that investigations be conducted impartially, and race-based selection without regard to investigator qualifications introduces potential bias. A jury should determine the extent to

which this deviation impacted the investigation's integrity and Plaintiff's ability to secure a fair evaluation.

### 3. Unlawful Influence in EEO Procedures

Defendant's actions contravened Air Force policies, including AFI 1-1 and MD-110, which require impartiality in EEO complaint handling. By giving Lt. Col. Weed early notice of Plaintiff's complaint, EEO Director Avance compromised the process's impartiality, permitting Weed to act under pretext and take retaliatory steps before official notification. These procedural violations raise due process concerns, justifying reconsideration to correct the compromised fairness of the process.

## C. Errors in Court's Application of Summary Judgment Standards

The Court misapplied Rule 56(e) by focusing narrowly on isolated incidents rather than examining the cumulative retaliatory pattern. Summary judgment is warranted only where there is no genuine issue of material fact, and credibility determinations must be left to a jury.

### 1. Misinterpretation of Genuine Issues of Material Fact

Under Anderson v. Liberty Lobby, conflicting statements from key individuals—including Lt. Col. Weed, IG Inspector Clark, and EEO Director Avance—raise

material credibility issues directly impacting Plaintiff's retaliation claims. The Court's failure to permit a jury assessment of these factual disputes misinterprets the purpose of summary judgment and exceeds the Court's role in determining credibility.

**2. Misapplication of Adverse Action Standard in Retaliation**

Claims The Court's interpretation of "adverse action" overlooked Title VII's broader definition, which includes actions beyond formal employment decisions that could deter a reasonable person from pursuing protected activity. Burlington N. v. White, 548 U.S. 53 (2006). Defendant's actions—including exclusion from meetings, increased workload, and solicited negative feedback—collectively meet Title VII's standard for adverse action. A jury must evaluate these adverse actions to determine their cumulative retaliatory impact.

**3. Failure to Recognize a "Convincing Mosaic" of Retaliation**

The Court's segmented review failed to recognize Plaintiff's experiences as a cohesive narrative of retaliation. Under Smith v. Lockheed-Martin Corp., 644 F.3d 1321 (11th Cir. 2011), Title VII allows cumulative evidence to demonstrate discriminatory intent through a "convincing mosaic." Plaintiff's exclusion from key meetings, increased workload, and negative evaluations, viewed cumulatively, establish a pattern of retaliatory hostility that warrants jury assessment.

**4. Misapplication of Rule 56(e)**

Under Rule 56(e), a non-moving party must present specific facts to show a genuine issue for trial. Plaintiff presented evidence of retaliatory actions, procedural misconduct, and altered documentation that meet this standard, yet the Court overlooked this evidence and granted summary judgment prematurely. Specifically, Plaintiff's evidence of manipulated documents, inconsistent sworn testimonies, and hostile treatment demonstrate material disputes that warrant a jury's assessment. This oversight misapplies Rule 56(e), which bars summary judgment where factual disputes demand jury resolution (see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

**5. Errors in Application of Title VII Standards**

The Court failed to consider Plaintiff's experiences as a unified narrative of retaliatory hostility, instead analyzing incidents in isolation. Title VII jurisprudence, particularly the "convincing mosaic" standard (see Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011)), mandates that cumulative actions be assessed collectively to infer retaliatory intent. Plaintiff's exclusion from meetings, increased workload, and solicited negative statements form a cohesive pattern of retaliatory hostility under Title VII, which should be reviewed by a jury rather than summarily dismissed.

**6. Misinterpretation of "Adverse Action" in Retaliation Claims**

The Court narrowly interpreted "adverse actions," disregarding that Title VII protects employees from a range of retaliatory measures beyond formal employment decisions. In Burlington Northern v. White, the Court held that adverse actions include any act likely to deter a reasonable employee from engaging in protected activity (548 U.S. 53 (2006)). Plaintiff's exclusion from decision-making, added workload, and negative feedback solicitation align with this broader definition. The cumulative effect of these actions, overlooked by the Court, meets Title VII's standard for adverse actions and warrants jury evaluation.

**7. Hostile Work Environment and Constructive Discharge Mischaracterization**

The Court mischaracterized Plaintiff's constructive discharge claim by disregarding the cumulative hostility that made her work environment intolerable. Constructive discharge occurs when working conditions become so severe that a reasonable person feels compelled to resign (see Pennsylvania State Police v. Suders, 542 U.S. 129 (2004)). Plaintiff's experience with racially charged comments, isolation, and increased workload after her EEO complaint establishes an environment that aligns with Title VII's hostile work environment standards.

This is a factual issue that only a jury should decide, not the Court on summary judgment.

**8. Constructive Discharge Due to Intolerable Conditions**

The Court should reconsider Plaintiff's resignation as constructive discharge due to the intolerable conditions caused by Defendant's cumulative retaliatory actions. Under Green v. Brennan, constructive discharge is met when conditions become unbearable for a reasonable person (578 U.S. 547 (2016)). The escalation of racially insensitive remarks, procedural misconduct, and workload increase created such a hostile environment that Plaintiff's resignation was inevitable. This issue warrants jury evaluation to determine if Defendant's conduct meets the constructive discharge standard under Title VII.

**D. Manifest Injustice and Right to a Fair Jury Trial**

The cumulative procedural errors, credibility disputes, and retaliatory conduct denied Plaintiff a fair trial. Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944), permits corrective action when tainted evidence or procedural irregularities result in manifest injustice.

**1. Reliance on Tampered Evidence and Procedural Misconduct**

The Court's acceptance of altered documents, such as the April 23, 2021 email, combined with procedural deviations, compromises the judgment's fairness. Correcting these errors under Rule 59(e) is essential to prevent injustice.

### 2. Denial of Jury Trial on Credibility and Factual Disputes

Summary judgment was inappropriate where significant factual disputes remain unresolved. Anderson v. Liberty Lobby, 477 U.S. at 255. A jury must evaluate the cumulative retaliatory impact and credibility of the Defendant's actions to ensure an impartial assessment.

For the reasons stated, Plaintiff respectfully requests that the Court vacate its Order granting summary judgment and reconsider Plaintiff's claims under Rule 59(e), ensuring a fair trial where a jury can assess the full scope of procedural, factual, and credibility issues central to Plaintiff's retaliation and hostile work environment claims under Title VII.

## VIII. EQUITABLE TOLLING DUE TO ATTORNEY MISSTEPS

Plaintiff respectfully requests the application of equitable tolling in light of her attorney's late filing, which caused procedural delays outside of Plaintiff's control. Equitable tolling is warranted where, as here, a litigant has diligently pursued their rights but was hindered by circumstances beyond their control,

specifically attorney negligence. Under Holland v. Florida, 560 U.S. 631 (2010), equitable tolling applies if a plaintiff shows they diligently pursued their rights and that extraordinary circumstances, such as ineffective assistance of counsel, prevented timely action.

Plaintiff acted promptly and in good faith throughout the case but was impeded by her attorney's untimely filing and subsequent failure to meet procedural deadlines. Courts have granted equitable tolling under similar circumstances, emphasizing that litigants should not be penalized for the missteps of counsel in cases where the client acted with due diligence. Therefore, Plaintiff respectfully requests the Court grant equitable tolling to prevent undue prejudice resulting from her former attorney's actions, thereby ensuring fairness in the review of her claims.

## IX. GROUNDS FOR RELIEF UNDER 59(E)

Plaintiff seeks relief under Rule 59(e) to correct clear legal and factual errors that, if unaddressed, would result in manifest injustice. The Court's summary judgment ruling overlooked key evidence, misapplied legal standards, and minimized critical facts that substantiate Plaintiff's retaliation claims. Specifically:

1. Legal Misinterpretations and Factual Errors: The Court's analysis fragmented adverse actions rather than viewing them as a coordinated retaliation campaign following Plaintiff's protected EEO complaint. This segmented approach neglects Title VII standards, which require a cumulative assessment of adverse actions, particularly in cases alleging a hostile work environment. Key facts demonstrating retaliatory intent were underappreciated, including the temporal proximity between Plaintiff's EEO activity and the adverse actions she faced.

2. Failure to Apply Proper Standards for Retaliation and Constructive Discharge: Title VII jurisprudence, including Burlington N. & Santa Fe Ry. Co. v. White and Green v. Brennan, mandates that retaliation and constructive discharge claims be evaluated for their cumulative impact on the work environment. Here, adverse actions like exclusion, scrutiny, and disparagement directly affected Plaintiff's ability to perform her role, creating an intolerable environment that meets the legal standard for constructive discharge.

3. Credibility Issues Requiring Jury Determination: Given the conflicting evidence, especially with respect to altered or missing documents (e.g.,

Weed's "Need a Vector" email), credibility determinations are necessary. As established in Anderson v. Liberty Lobby, Inc., credibility assessments are reserved for the jury, not the summary judgment stage.

4. Material Omissions and Procedural Gaps in Evidence: The Court's decision relied on incomplete and altered evidence, which obstructs a fair review. Missing or altered documents hindered the full presentation of Plaintiff's claims, requiring reconsideration to ensure all pertinent evidence is assessed.

5. Standard for Reconsideration Met: Rule 59(e) permits reconsideration to correct legal and factual oversights. Here, a holistic assessment of Plaintiff's claims, including the cumulative retaliation she experienced, is necessary to correct errors and prevent injustice.

Reconsideration under Rule 59(e) is warranted to ensure that Plaintiff's case receives a thorough and fair review in line with established legal standards for retaliation, constructive discharge, and summary judgment.

**WHEREFORE**, for the reasons set forth above, Plaintiff respectfully urges this Court to reconsider its order granting summary judgment. The coordinated actions

of senior officials at Eglin AFB—marked by regulatory breaches, procedural manipulation, and retaliation—form a clear basis for relief under Rule 59(e). Each documented instance of altered evidence, unauthorized communication, and selective investigatory process represents a pattern of misconduct that the Court's initial ruling did not fully address. Reconsideration is necessary to correct overlooked factual disputes, ensure procedural fairness, and allow a jury to evaluate the substantial evidence of a hostile work environment and retaliatory intent that underpins Plaintiff's constructive discharge claim.

## CERTIFICATE OF COMPLIANCE WITH WORD LIMIT

The undersigned certifies that the foregoing complies with Local Rule 7.1(F) and contains less than 800 words, excluding the case style, signature block, and required certificates.

Respectfully submitted,

DATED: October 28, 2024

Cecile Jackson
Plaintiff, ***Pro Se***
2551 Salamanca Street
Navarre, FL 32566
email: jacksonLegalCase@gmail.com
Telephone: (850) 341-9285
Facsimile: n/a

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

CASE NO: **3:23-cv-03881-MCR-HTC**

## CERTIFICATE OF SERVICE

I, Cecile Jackson, do hereby CERTIFY that a true and correct copy of the foregoing Plaintiff's Motin to Reconsider 59(e) has been furnished to the following in the manner specified on this 28th day of October 2024:

1. Clerk, U. S. District Court
   1 North Palafox Street, Room 226
   Pensacola, FL 32502-5658
   **Sent *via*:** Hand Delivery

2. Andrew Jabus Grogan
   DOJ-USAO
   Northern District of Florida
   111 N. Adams Street, 4th Floor
   Tallahassee, FL 32301
   Email: andrew.grogan@usdoj.gov
   Lead Attorney
   **Sent *via*:** Electronic delivery through CM/ECF by Court Clerk

DATED: October 28, 2024.

Cecile Jackson
Plaintiff, ***Pro Se***
2551 Salamanca Street
Navarre, FL 32566
email: jacksonLegalCase@gmail.com
Telephone: (850) 341-9285

**Evidentiary List**

Ex. 1 2018 - Award 3rd Qtr Civ.pdf

Ex. 10, 2021 04 23 - Email, 0725, EEO Ack Claim.pdf

Ex. 11, SS, Avance.pdf

Ex. 12, 2023 11 27, Depo., Weed.pdf

Ex. 13, MD-110 Chapter 6.pdf

Ex. 14, 2022 05 20 - Davis Decl.pdf

Ex. 15, 2023 04 23, Need a Vector.pdf

Ex. 16, 2021 04 23 - Falsified Need a Vector.pdf

Ex. 17, 2021 04 23 - Comparison Email.pdf

Ex. 18, 2021 04 26 - RMOs Notified.pdf

Ex. 19, 2021 04 xx - MFRs.pdf

Ex. 2 2019 - Civilian of the Year Award.pdf

Ex. 21, CDI Memo.pdf

Ex. 23, 2021 04 24 - Shull Decl.pdf

Ex. 24, 2022 04 14 - Black Decl.pdf

Ex. 25, 2022 05 20 - Shull Decl2.pdf

Ex. 28, 2022 01 24, Final Climax.pdf

Ex. 29, SCOS Emails.pdf

Ex. 3 2021 02 25 - Weed, Front Line .pdf

Ex. 30, 2021 04 xx - Undated Cards.pdf

Ex. 4. 2020 07 02 - Email, Weed and Pl, DEIA.pdf

Ex. 5, 2020 06 18 - COMPTON - JACKSON - All Call.pdf

Ex. 8, 2021 03 03 - Davis Giggle Email.pdf

Ex. 9, 2022 02 17, Initial Contact.pdf Evidentiary List